UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
BORYS PLESHA, NATALIYA PLESHA,                             :
and LILIYA BORYSIVNA PLESHA,                               :
                                                           :
                                                           :  **MEMORANDUM DECISION**
                        Plaintiffs,                        :  **AND ORDER**
                                                           :
          - against -                                      :  24-cv-7234 (BMC)
                                                           :
MERRICK GARLAND, ALEJANDRO                                 :
MAYORKAS, UR MENDOZA JADDOU,                               :
CHRISTOPHER A. WRAY, CONNIE                                :
NOLAN, and ROBERT M. COWAN,                                :
                                                           :
                        Defendants.                        :
----------------------------------------------------------- X

**COGAN**, District Judge.

Borys Plesha, a Ukrainian citizen residing in Germany as a refugee, seeks a writ of mandamus under 28 U.S.C. § 1361, as well as a declaration and injunction under the Administrative Procedure Act ("APA") and the Fifth Amendment due process clause, compelling defendants, who are officials of the immigration authorities, to adjudicate his application for a waiver of grounds of inadmissibility. His wife and adult daughter are also plaintiffs in this case. Before me is defendants' motion to dismiss. For the reasons below, defendants' motion is GRANTED.

## BACKGROUND

Borys Plesha is a citizen of Ukraine. He is currently living as a refugee in Germany as a result of the armed conflict between Russia and Ukraine. Nataliya Plesha is a U.S. Lawful Permanent Resident and the spouse of Borys. Liliya Borysivna Plesha is a U.S. Citizen and the adult child of Borys and Nataliya. Liliya and Nataliya currently reside in the U.S.

In 2017, Liliya filed a form I-130 petition for alien relative for Borys, which was approved. Borys then filed a DS-260 application for an immigrant visa with the U.S. Consular

Unit in Kiev and appeared for an interview in 2019. At the interview, Borys was informed that he was not eligible for an immigrant visa pursuant to INA § 212(a)(6)(c)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."). Nataliya, who went through the same process, was approved and received an immigrant visa.

Almost four years later, on March 2, 2023, Borys filed a form I-601 application for a waiver of grounds of inadmissibility with the United States Customs and Immigration Service ("USCIS"). USCIS has not yet adjudicated his application.

On October 15, 2024, nineteen months and two weeks after Borys filed his I-601 application, plaintiffs filed the instant action. They allege that this delay is unreasonable. Defendants have moved to dismiss on the grounds that plaintiffs Nataliya and Liliya lack standing, that plaintiffs' mandamus claim fails as a matter of law, and that the delay in adjudicating Borys' I-601 application has not been undue such that action under the APA would be warranted.

## DISCUSSION

**I.    Legal Standard**

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists." Giammatteo v. Newton, 452 F. App'x 24, 27 (2d Cir. 2011) (citing Makarova, 201 F.3d at 113). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d

Cir. 2006) (internal quotation marks omitted), but jurisdiction must still "be shown affirmatively," Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570).

In applying this standard, a court accepts as true all well-pleaded factual allegations but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Id. When a court can infer no more than the mere possibility of misconduct from the factual averments – in other words, where the well-pled allegations of a complaint have not "nudged [plaintiffs'] claims across the line from conceivable to plausible" – dismissal is appropriate. Twombly, 550 U.S. at 570.

Plaintiffs take issue with the fact that defendants do not identify specific subparts (1) and (6) of Rule 12(b) as the bases for their motion to dismiss. But plaintiffs point to no authority requiring a movant to formulaically recite the subpart(s) under which he moves for a motion to dismiss; instead, the requirement that plaintiffs identify is that "Rule 12(b)(6) imposes a substantial burden of proof upon the moving party." Jenkins v. Arcade Bldg. Maint., 44 F. Supp. 2d 524, 527 (S.D.N.Y. 1999); cf. Sundown by Farkas v. Aetna Life Ins. Co., No. 23-cv-1905, 2024 WL 1051165, at *12, 12 n.13 (E.D.N.Y. Jan. 16, 2024) (considering plaintiff's argument in response to defendant's Rule 12(b)(1) challenge even though it was mistakenly made in response to defendant's Rule 12(b)(6) challenge, and considering defendant's Rule 12(b)(6) argument

3

even though it was mistakenly made as a Rule 12(b)(1) argument). And this Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 501 (2006) (citation omitted). Accordingly, despite not invoking specific subparts of Rule 12(b), this Court considers whether it has subject matter jurisdiction over plaintiffs' claims, as well as whether defendants have met their "substantial burden" of showing that plaintiffs have failed to state a claim on which relief can be granted.

**II.     Mandamus Act Claim**

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. That mandamus is an "extraordinary remedy" is well established. Pittston Coal Group v. Sebben, 488 U.S. 105, 121 (1988). To warrant relief under § 1361, a plaintiff must establish: "(1) a clear right [] to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) [that] no other adequate remedy [is] available." Anderson v. Bowen, 881 F.2d 1, 5 (2d Cir. 1989) (citation and internal quotation marks omitted).

Where, as here, the APA provides an alternative remedy, plaintiffs cannot satisfy the requirement that "no adequate remedy [be] available." Id.; see, e.g., Xu v. Cissna, 434 F. Supp. 3d 43, 56 (S.D.N.Y. 2020) (dismissing mandamus claim for undue delay reasoning that "an alternative adequate remedy would be possible under the APA," even if such remedy was not available under the particular circumstances of the suit before the Court). Because this Court "lacks the statutory or constitutional power to adjudicate" plaintiffs' claim for mandamus relief, this claim is dismissed for lack of subject matter jurisdiction. Makarova, 201 F.3d at 113.

4

### III.     Administrative Procedure Act Claim

The APA, in turn, provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Plaintiffs bring a claim under 5 U.S.C. § 706(1), which requires courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Such a claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004).

In addition to their claim challenging defendants' undue delay under 5 U.S.C. § 706(1), plaintiffs also bring a claim under 5 U.S.C. § 706(2), which requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;" among other similar wrongs. However, plaintiffs do not challenge any "agency action, findings, [or] conclusions." Their entire complaint focuses on agencies' *failure to act* in delaying adjudication of Borys' form I-601 application, for which § 706(1) provides a remedy. Because plaintiffs do not allege any injury resulting from agency action, only inaction, the below analysis proceeds under 5 U.S.C. § 706(1).

#### A.     Subject Matter Jurisdiction

Defendants challenge whether Nataliya and Liliya have standing to bring a claim under the APA. Standing requires that a plaintiff "have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision." Ahmed v. Cissna, 327 F. Supp. 3d 650, 662 (S.D.N.Y. 2018), aff'd sub nom. Ahmed v. Cuccinelli, 792 F. App'x 908 (2d Cir. 2020) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)).

5

Liliya and Nataliya meet these requirements.  Both allege injuries in fact from defendants' delay in adjudicating Borys' I-601 application.  The complaint states that "Nataliya is suffering – and will continue to suffer – extreme psychological, medical, and financial hardship if Plaintiff Boyrs is not granted an Immigration Visa to be reunited with his family in the United States."  Liliya is the individual who filed the form I-130 requesting permission for Borys to receive an immigrant visa, causing the delay in proceedings related to Borys' receipt of an immigrant visa to also injure Liliya.  Despite defendants' assertion that Nataliya and Liliya should not have a "right in *someone else's* legal proceeding," Dep't of State v. Munoz, 602 U.S. 899, 916-17 (emphasis defendants'), the "disregard" of family members' interest in having their relatives' applications related to a form I-130 adjudicated without undue delay, as set out by the APA, amounts to an injury in fact.  Ahmed v. Cissna, 327 F. Supp. 3d at 665-66.

This injury is directly traceable to the challenged conduct of defendants: they have not adjudicated Borys' application, resulting in its delay.  Furthermore, the injury will be redressed by a favorable judicial decision, namely an order compelling USCIS to adjudicate the application, complete any background checks, and inform the U.S. Department of State of the adjudication.  Indeed, courts commonly permit plaintiffs to bring claims challenging delays in their family members' applications related to form I-130 petitions for alien relatives.  See, e.g., Waris v. Bitter, No. 23-cv-948, 2024 WL 3237914 (S.D.N.Y. June 28, 2024) (wife brought claim for alleged undue delay in adjudication of husband's visa application); Sharifi v. Blinken, No. 23-cv-5112, 2024 WL 1798185, at *2 (E.D.N.Y. Apr. 25, 2024) (son brought claim for alleged undue delay in adjudication of mother's visa application); Ahmed v. Bitter, No. 23-cv-189, 2024 WL 22763 (E.D.N.Y. Jan. 2, 2024) (mother brought claim for alleged undue delay of son's visa application).

Having established that plaintiffs have standing to bring their claim under § 706(1) of the APA, the Court also concludes that this is the proper forum for plaintiffs' APA claim. "Although the APA does not itself confer subject matter jurisdiction, . . . the Federal Question Statute, 28 U.S.C. § 1331, confers jurisdiction over a suit that 'arises under' a 'right of action' created by the APA." Sharkey v. Quarantillo, 541 F.3d 75, 84 (2d Cir. 2008) (citations omitted). Plaintiffs' claim under the APA is thus "properly brought in district court." Id.

B.     **Failure to State a Claim**

Considering the merits of plaintiffs' § 706(1) APA claim, courts regularly apply the six factors set forth in Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984) (the "TRAC factors") to determine whether an agency's adjudication delay is reasonable under the APA. They are:

> (i) the time agencies take to make decisions must be governed by a rule of reason; (ii) where Congress has provided a timetable, it may supply content for this rule of reason; (iii) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (iv) the effect of expediting delayed action on agency activities of a higher or competing priority; (v) the nature and extent of the interests prejudiced by delay; and (vi) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Xu, 434 F. Supp. 3d at 50 n.3. Notably, even considering these factors, "[t]he Supreme Court has held that evidence of the passage of time cannot, standing alone," support a claim for unreasonably delayed administrative action." Espin v. Gantner, 381 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) (citing INS v. Miranda, 459 U.S. 14 (1982)).

Regarding the passage of time in this case, less than two years have passed since Borys submitted his form I-601 application. Many courts in this Circuit have held that such a delay is insufficient to grant APA relief. See, e.g., Chen v. Mayorkas, No. 23-cv-1357, 2024 WL 2846911, at *6 (E.D.N.Y. June 5, 2024) (collecting cases) (three year delay in adjudication of I-

7

601 application not "unreasonable"); Al Saidi v. U.S. Embassy in Djibouti, 2021 WL 2515772, at *4 (E.D.N.Y. June 18, 2021) ("[C]ourts in this circuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable." (citing Almakalani v. McAleenan, 527 F. Supp. 3d 205, 225 (E.D.N.Y. 2021))); De Oliveira v. Barr, No. 19-cv-1508, 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020) (same); Gong v. Duke, 282 F. Supp. 3d 566, 568 (E.D.N.Y. Oct. 18, 2017) (citing district court opinions that have concluded delays under four years are reasonable).

The reasonableness of defendants' delay is further supported by the fact that the delay plaintiffs have experienced is well within the range of typical processing times. At the time defendants moved to dismiss this case, defendants' average processing time for I-601 applications was listed on the USCIS website as twenty-nine months for 80% of applications. This is approximately ten months longer than plaintiffs had waited for adjudication of Borys' application when they filed this action, and it will still be seven more months until plaintiffs have waited the average processing time for 80% of I-601 applications. The fact that plaintiffs have not waited even the average amount of time it takes defendants to process 80% of I-601 applications means that defendants have not unreasonably or unduly delayed adjudicating Borys' application.

Plaintiffs challenge this twenty-nine month average processing time, alleging that the timeframe is arbitrary. Plaintiffs state that the processing time is "USCIS's own self determined hope to adjudicate 80% of cases before the timeframe listed on their website" and "subject to change at the whim and need of" defendants. Plaintiffs also think it is not reasonable that they could "wait the full timeframe detailed in Defendants' 'processing times', [and] reach the end of

that 'processing time' only for the agency to have determined that a longer period of time is required due to their own internal structural decisions."

Plaintiffs misunderstand the average processing time listed on the USCIS website. The processing time is not a "hope" or a "plan," it is simply the average amount of time that it takes for USCIS to adjudicate 80% of the I-601 applications it receives. Plaintiffs are correct that this length of time might change, if it takes USCIS longer on average to adjudicate applications, but the processing time on the website is not an arbitrary decision defendants have made (or chosen not to make); nor is it the rule that defendants use to determine how long and in what order to process I-601 applications. It is just the calculation of how long it takes them in practice.

If the average processing time for I-601 applications was "in excess of five, six, seven years," which "district courts have generally found . . . unreasonable," perhaps defendants' delay in adjudicating all applications would be undue. Ahmed v. Bitter, 2024 WL 22763, at *7 (quotation and citations omitted). But because the average processing time is shorter than the "three to five years [that] are often not unreasonable," and plaintiffs have not even waited this average delay, plaintiffs fail to allege that the passage of time is not reasonable. Id. (quotation and citations omitted).

Moreover, the process by which defendants determine the order of review is not unreasonable. Defendants assert that "USCIS processes I-601s on a first-in-first-out basis." This method for issuing decisions is "a sufficient rule of reason under the TRAC analysis." Chen, 2024 WL 2846911, at *5. Plaintiffs do not challenge the reasonableness of the first-in-first-out approach, rather they take issue with defendants' assertion that plaintiffs should have availed themselves of USCIS's administrative expedite request procedure for humanitarian emergencies. Plaintiffs assert that defendants' reliance on the expedite request procedure as a defense

9

"establishes at its core the agency's undue delay" and "inherently implies that [defendants] would rather 'give the run-around' to adjudicate Plaintiffs' pending application by attempting to force the filing of a secondary and unnecessary duplicative application for relief." But defendants' suggestion that plaintiffs file an expedite request does not diminish defendants' use of the first-in-first-out rule to process form I-601 applications as a "rule of reason."

Plaintiffs' arguments related to the average processing time listed on the USCIS website also do not undermine the reasonableness of defendants' method for reviewing I-601 applications. As stated above, the average processing time is not what defendants use to determine how long or in what order to process I-601 applications; that would be the first-in-first-out rule. Thus, any issues with the listed average processing time do not affect the reasonableness of defendants' order in which they review applications.

In terms of the human welfare at stake and the nature and extent of the interests prejudiced by delay, certainly plaintiffs' lives are, and will continue to be, severely impacted by defendants' delay in adjudicating Borys' I-601 application. Borys is displaced from his home in Ukraine, unable to reside with his wife and daughter, and is currently living in a refugee camp in Germany because of the armed conflict between Russia and Ukraine. Nataliya and Liliya are without their husband and father, respectively. Plaintiffs allege that Nataliya "is suffering – and will continue to suffer – extreme psychological, medical and financial hardship." The toll of plaintiffs' uncertainty about their futures and ability to reside together in the U.S., caused by defendants' delay, is obvious. The third and fifth TRAC factors thus weigh in favor of finding that defendants have unreasonably delayed adjudicating Borys' I-601 application.

Unfortunately, the human welfare at stake and harm suffered by plaintiffs due to defendants' delay is not unique. Individuals whose applications will be adjudicated before Borys

10

will also have been waiting for longer, and many if not all of them are facing the same or worse harms and threats to their welfare. To grant plaintiffs relief would simply push Borys ahead of other applicants waiting for the adjudication of their I-601 application, moving them further back in line. See Yan Chen v. Nielsen, No. 17-cv-7157, 2018 WL 1221130, at *2 (E.D.N.Y. Mar. 8, 2018) ("There are many other applicants who have waited even longer than plaintiff; to grant her priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit."); L.M. v. Johnson, 150 F. Supp. 3d 202, 213 (E.D.N.Y. 2015); Pesantez v. Johnson, No. 15-cv-1155, 2015 WL 5475655, at *4 (E.D.N.Y. Sept. 17, 2015); Li v. Chertoff, No. 07-cv-3836, 2007 WL 4326784, at *6 (E.D.N.Y. Dec. 7, 2007).

The D.C. Circuit and district courts in this Circuit have held that it is appropriate to "refuse[ ] to grant relief, even though all the other factors considered in TRAC favor[ ] it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (quoting In re Barr Labs., Inc., 930 F.2d 72, 75 (D.C. Cir. 1991)) (internal quotation marks omitted); see also Chen, 2024 WL 2846911, at *5. Because that is the case here, that granting plaintiffs' request would push all other individuals waiting for adjudication of their I-601 applications back in line to let Borys go first, plaintiffs are not entitled to relief.

Plaintiffs assert that the effect of their relief sought on the adjudication of other individuals' I-601 applications is irrelevant, stating that such a concern is "clearly counter to humility and understanding of humanity," and "fails to state any objection to Plaintiff's right to have their application or relief adjudicated within a reasonable period of time." Plaintiffs argue that "[t]o find that Plaintiffs cannot make a claim for undue delay merely because other people

11

are also waiting is to abrogate from the very reason that the Court retains jurisdiction in this matter, which is to determine" whether there has been undue delay as to Borys' application, "not to account for the countless others who are similarly suffering, but have not made a claim for redress before a federal Court for whatever individual reasons."  In fact, it is precisely this Court's role to "account for the countless others who are similarly suffering," as enumerated in the fourth TRAC factor.  Although the Court recognizes the suffering that plaintiffs are experiencing while waiting for defendants to adjudicate Borys' form I-601 application, if this Court decided that Borys' application was *more* important than those of the other applicants, it would be unfair to those who have been waiting for longer and who likely are experiencing the same or similar harms from the delay.

Because the passage of time since Borys filed his I-601 application falls short of the length of delay that is considered unreasonable under the APA; the fact that defendants' time taken to adjudicate I-601 applications is governed by a rule of reason; and granting plaintiffs' relief sought would push Borys ahead of other applicants waiting for the adjudication of their I-601 application, plaintiffs fail to state a claim for relief under the APA.

**IV.    Fifth Amendment Due Process Clause Claim**

Plaintiffs lack standing to bring their last claim, that defendants have violated the due process clause of the Fifth Amendment by failing to adjudicate Borys' form I-601 application. To bring a Fifth Amendment due process claim, plaintiffs must allege the violation of a "fundamental right[ or] libert[y]" which is, "objectively, 'deeply rooted in this Nation's history and tradition,'" and plaintiffs must include a "'careful description' of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 720-21 (1997) (quotations and citations omitted).  Citizens do not have a "deeply rooted" constitutional right to bring their

noncitizen parents to the U.S. Esghai v. U.S. Dep't of State, No. 24-cv-2993, 2024 WL 4753799, at *8 (S.D.N.Y. Nov. 12, 2024) (citing Munoz, 602 U.S. 899).

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       December 24, 2024

13